COMMONWEALTH OF MASSACHUSETTS

Supreme Judicial Court for the Commonwealth

SUFFOLK, SS.                                    Law No. 14927

In the Matter of

EDWARD J. DeSAULNIER, JR.

and

VINCENT R. BROGNA,

Respondents

ANSWER AND FURTHER INFORMATION

OF THE RESPONDENT DeSAULNIER

To the Honorable the Justices of the Supreme Judicial Court:

Whereas on October 5, 1971, special counsel to this Honorable Court filed with the Court a certain Information designating Edward J. DeSaulnier, Jr., Justice of the Superior Court as a joint Respondent, the said Edward J. DeSaulnier, Jr., now, without waiving his "Plea to the Jurisdiction" filed herein, but expressly relying thereon, respectfully makes answer and further informs the Court as follows:

(corresponding Paragraphs in the Information are noted in parenthesis)
1. (1–6) Paragraphs 1 through 6 of the Information are true statements. This the Respondent knows of his own personal knowledge with respect to Paragraphs 1 through 3, relating to his admission to the Massachusetts Bar, and appointment to the Superior Court.
2. (7–10) Paragraphs 7 through 10 of the Information to the best of the Respondent's information and belief are true.
3. (11) The Respondent admits the general allegation of Paragraph 11, and further informs the Court that his social relationship with Nathan Baker never to his knowledge entered into his professional or judicial affairs.
4. (12–31) The Respondent, with respect to these Paragraphs, can only state that, having been provided with certain transcript material, he is aware that there has been testimony and reported interviews in which the allegations of the Paragraphs are reported. Apart from references to the docket of the Court and the official Transcript of the Court, the truth of which he does not dispute, he cannot assist the Court as to the accuracy, veracity or reliability of that testimony, other than to inform the Court that on other occasions in the reported testimony of Michael Raymond he has made statements which are in conflict and inconsistent with the matters contained in these paragraphs.
5. (32) The Respondent respectfully differs from the part of Paragraph 32 which states that, "At all times material hereto, Mr. Crotty was an intimate social friend of Mr. Justice DeSaulnier,"

and further informs the Court that prior to his appointment to the Superior Court his relationship was of a casual nature. After the Respondent commenced sitting in that Court and was assigned on many occasions to the Worcester Superior Court he did socialize with Attorney Crotty along with other members of the Worcester County Bar and gradually a friendlier relationship developed. His relationship with Attorney Crotty did not, to his knowledge, have any bearing directly or indirectly on Mr. Crotty's employment as counsel to Michael Raymond, nor to any of the proceedings in that case.

6. (33–38) The Respondent, with respect to these Paragraphs, can only state that, having been provided with certain transcript material, he is aware that there has been testimony and reported interviews in which the allegations of the Paragraphs are reported. Apart from references to the docket of the Court and the official Transcript of the Court, the truth of which he does not dispute, he cannot assist the Court as to the accuracy, veracity or reliability of that testimony, other than to inform the Court that on other occasions in the reported testimony of Michael Raymond he has made statements which are in conflict and inconsistent with the matters contained in these paragraphs.

7. (39–43) The Respondent admits the accuracy of the official transcripts and court records referred to in Paragraphs 39–43, and further informs the Court that none of the matters alleged in those Paragraphs were officially or unofficially called to his attention until the summer of 1971.

8. (44) The Respondent, with respect to this Paragraph, can only state, that, having been provided with certain transcript material, he is aware that there has been testimony and reported interviews in which the allegations of the Paragraphs are reported. Apart from references to the docket of the Court and the official Transcript of the Court, the truth of which he does not dispute, he cannot assist the Court as to the accuracy, veracity or reliability of that testimony, other than to inform the Court that on other occasions in the reported testimony of Michael Raymond he has made statements which are in conflict and inconsistent with the matters contained in these paragraphs.

9. (45) The Respondent admits the truth of the matters contained in the first sentence in Paragraph 45, and further informs the Court that Judge DeSaulnier during the period June through December, 1962, was not assigned to, nor did he preside at, any criminal session in the County of Middlesex. The Respondent respectfully suggests that contrary to the allegation contained in Paragraph 45, the Annual Schedule of Assignments, published in December for the coming year, is widely circulated and is available to all persons interested in Superior Court activities and personnel.

10. (46–49) The Respondent is unable to assist the Court with reference to any of the matters contained in Paragraphs 46 through 49.

He has no knowledge of any of the events or statements alleged therein.

11. (50) The Respondent admits the accuracy of the official transcript.

12. (51–54) The Respondent is unable to assist the Court with reference to any of the matters contained in Paragraphs 51 through 54. He has no knowledge of any of the events or statements alleged therein.

13. (55–56) The Respondent categorically denies the truth of the statements attributed to Michael Raymond in Paragraphs 55 and 56. He further informs the Court that based upon record material furnished to him, Mr. Raymond is a several times convicted thief and swindler, and an admitted perjurer. Never during September, 1962, did the Respondent, make or receive any telephone call having to do with the Middlesex County case of Michael J. Raymond, nor was he aware that such a criminal case even existed.

14. (57–58) The Respondent admits the truth and accuracy of the official transcript referred to in Paragraphs 57–58 and is unable to assist the Court as to any of the other matters alleged in those Paragraphs.

15. (59) The Respondent denies the truth of the statements attributed to Mr. Raymond in Paragraph 59 and further informs the Court:

(a) that he has absolutely no memory of having ever met or talked to Raymond;

(b) that a review of transcript material made available to him indicates that on the first occasion that Raymond gave testimony involving the subject matter of this information he testified that following his final court appearance he "Left the courtroom, and the building and went back to New York", and that

(c) in response to this inquiry from a United States Senator, "Did you ever talk to Judge DeSaulnier after the probation in the court in Massachusetts", he replied, "I had no reason to, it was finished business."

16. (60) The Respondent cannot assist the Court with reference to the matters contained in Paragraph 60.

17. (61–64) The Respondent admits the accuracy of the official transcripts and court records referred to in Paragraphs 61–64, and further informs the Court that he had no knowledge, nor was he informed of any of the matters contained until approximately April 29, 1964.

18. (65) The Respondent admits the allegations contained in Paragraph 65 insofar as they are based on court or probation records, however, the Respondent informs the Court that the probation file reveals that:

(a) On April 29, 1968, an entry in the probation record states "Capias to issue and to be filed with the Middlesex Superior Court until such time as disposition is made of subject's case in New York".

(b) and that on July 27, 1964, Assistant United States Attorney

Sprizzo, New York, informed the Middlesex Probation Office that he hoped no action would be taken by any other jurisdiction against Raymond that would hinder the New York investigation.

Respectfully submitted,
By his attorney,
WALTER J. HURLEY.